O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | | |
|---|---|---|---|
| Wendy K. Hernandez | | Not Present | n/a |
| Deputy Clerk | | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):          Attorneys Present for Defendant(s):

Not Present                                                   Not Present

**Proceedings:**   **(In Chambers) Order Affirming the Decision of the Secretary**

Pending before the Court is Plaintiff's appeal of the Secretary of the United States Health and Human Services' decision regarding amounts owed under the Medicare program. A court trial was held on November 19, 2010. Based on the arguments made at trial, on the papers submitted by both parties, and the Administrative Record, the Court AFFIRMS the decision of the Secretary.

I.   Background

Plaintiff Aime Bend, D.C. ("Plaintiff" or "Dr. Bend") filed this case appealing a final decision of Defendant Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("Secretary") requiring Dr. Bend to reimburse the Medicare program for overpayments based on improper billing practices. *Compl.* ¶¶ 23-28.

   A.   The Statutory and Regulatory Background

      1.   The Medicare Act

The Medicare Act, established under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg, pays for covered medical care provided to eligible aged and disabled persons. The Medicare Program is administered on behalf of the Secretary of Health and Human Services by the Centers for Medicare and Medicaid Services ("CMS"). The Medicare Act is comprised of three main parts: Medicare Part A pays for covered inpatient hospital care and related services, 42 U.S.C. §§ 1395c-1395i-5; Medicare Part B provides supplemental medical

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

insurance for certain qualified services and equipment, such as chiropractic services, 42 U.S.C. §§ 1395k(a), 1395(s)(1); and Medicare Part C authorizes beneficiaries to obtain covered services through Health Maintenance Organizations and other managed care arrangements, 42 U.S.C. § 1395w-21-1395w-28. The case before the Court concerns Medicare Part B, which resembles "a private medical insurance program that is subsidized in major part by the federal government." *Schweiker v. McClure*, 456 U.S. 188, 190 (1982).

Coverage of medical services under the Medicare Act is, in large part, determined by sections 1862(a) and 1833(e) of the Social Security Act, codified at 42 U.S.C. § 1395y(a) and 42 U.S.C. § 1395l(e), respectively. Section 1862(a) limits Medicare payments to those services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Section 1833(e) prohibits any payment under Medicare unless the provider seeking payment provides sufficient information and documentation to determine whether payment is due. 42 U.S.C. § 1395l(e).

Reimbursement to providers of chiropractic services is limited under the Medicare program. In fact, Medicare will "only pay for a chiropractor's manual manipulation of the spine to correct a subluxation if the subluxation has resulted in a musculoskeletal condition for which manual manipulation is appropriate treatment." 42 C.F.R. § 410.21(b). While certain diagnostic tools may be necessary to determine if such a condition exists, reimbursement for those tools or use of those tools, including x-rays, in a chiropractor's practice is expressly prohibited by regulation. 42 C.F.R. § 410.21(b)(2).

    2.    <u>Medicare Carriers</u>

CMS, in administering Medicare Part B, acts through private fiscal agents called "carriers." 42 U.S.C. § 1395u; 42 C.F.R. Part 421. Carriers are private entities that contract with the Secretary to perform a number of functions including: (1) making coverage determinations in accordance with the Medicare Act, applicable regulations, Medicare Part B Supplier Manual, or other agency guidance; (2) determining reimbursement rates and allowable payments; (3) conducting audits of claims provided by providers; and (4) rejecting or adjusting payment requests. *See* 42 U.S.C. § 1395u(b)(3)(B); 42 C.F.R. § 421.200.

To maximize administrative efficiency, carriers generally authorize payment on claims immediately upon receipt of the claims as long as there are no readily apparent irregularities. *See Maximum Comfort, Inc. v. Sec'y of Health and Human Servs.*, 512 F.3d 1081, 1084 (9th Cir. 2007) (immediate payments are made to Medicare providers due to administrative efficiency).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

Nevertheless, carriers are charged with ensuring that reimbursements are proper, and, in doing so, conduct post-payment audits. When audited, a Medicare provider must provide sufficient evidence to the Secretary to ensure that payments received were for covered services. *See* 42 U.S.C. § 1395g(a).

        3.        <u>Medicare Appeals</u>

In the event that a Medicare provider disagrees with a carrier's post-payment audit, the provider must present a claim through the appeals process expressly provided for by statute, and must exhaust all administrative remedies available. *See* 42 U.S.C. § 1395ff(b) (incorporating by reference 42 U.S.C. § 405(b)). Only after the administrative review process is exhausted may a provider pursue judicial review of the Secretary's determination. *Id.*

        B.        <u>Factual and Procedural History of Dr. Bend's Case</u>

Dr. Bend's carrier, the National Heritage Insurance Company ("NHIC" or "Carrier"), conducted a post-payment audit of 223 claims paid, which represent 57 beneficiaries and 708 chiropractic services performed between June 1, 2004 and November 30, 2004. *See Administrative Record* (*"AR"*) at 7161-7176. The results of that audit were sent in a June 3, 2005 letter to Dr. Bend, indicating that many of the services billed were not reasonable or necessary. *Id.* at 7084-7100. The letter explained that Dr. Bend was selected for review "because compared to [her] peers, [she was] identified to be 6 times above the norm in terms of number of patients; 15 times above in allowed services; 15 times above in allowed amount; and 3 times above in frequency of services." *Id.* at 7084. Of the 223 claims paid, the Carrier randomly selected 40 claims for review, representing 140 services performed. *Id.* at 7094. Twenty-three of the 140 services were substantiated by the documents provided by Dr. Bend, while no records were provided for 15 claims, two claims used incorrect billing codes, and 100 claims were deemed "unreasonable and unnecessary." *Id.* As a result, the Carrier initiated an audit based on a statistical sampling for 48 beneficiaries representing 336 claims and 1,405 services provided between April 1, 2003 through March 31, 2005. *Id.* at 7098. Based on the documents submitted by Dr. Bend and, among other things, a report provided by a chiropractic Medicare Advisor, Steven G. Becker, D.C. ("Dr. Becker"), the Carrier made its determination. Once again, the Carrier determined that many of the sampled claims lacked proper documentation, used incorrect billing codes, and were not medically reasonable or necessary. *Id.* at 7016-7039. The number of errors in the statistical sample were extrapolated to the universe of claims for that review period and it was determined that Dr. Bend was overpaid in the amount of $90,001.00. *Id.* at 7037.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

Dr. Bend sought review of the Carrier's audit and a hearing before a Hearing Officer for the Carrier took place on May 3, 2006. *Id.* at 6438. On June 26, 2006, the Hearing Officer issued a partially favorable decision for Dr. Bend, determining that not all the billing entries were improper. *Id.* This determination led the Carrier to revise the overpayment amount to $74,980.00. *Id.* at 6428. Dr. Bend timely appealed the Hearing Officer's decision to an Administrative Law Judge ("ALJ") in the Office of Medicare Hearings and Appeals. *Id.* at 6102-6104.

Three hearings were conducted by ALJ Jesse J. Pease on January 25, February 27, and March 8, 2007. *Id.* at 7660-7705. On April 20, 2007, the ALJ issued his decision and partially reversed and partially upheld the Hearing Officer's determination. *Id.* at 53. The ALJ determined that the statistical sampling and subsequent extrapolation by the Carrier was valid, and that:

> Some of the chiropractic services provided to the beneficiaries were medically reasonable and necessary. However, other services provided are either down coded or denied because the services provided were not medically reasonable or necessary . . . Any overpayment should be repaid by Dr. Bend, as those services are not covered under Part B of Medicare. The Hearing Officer Decision is partially reversed and partially upheld.

*Id.* Based on the ALJ's decision, the Carrier reduced the overpayment amount to $45,021.00. *See id.* 7711-7712. Dr. Bend petitioned the Medicare Appeals Council for review of the ALJ determination, which the Medicare Appeals Council denied. *See id.* at 58. In doing so, the Medicare Appeals Council stated:

> The ALJ decision contains a comprehensive review of the statutory, regulatory, and administrative authority concerning coding; chiropractic services; contractor auditing and statistical sampling; and waiver of liability and overpayment recovery . . . The ALJ first upheld the statistical sample and subsequent extrapolation as valid. The ALJ then made individual coverage findings for services provided to each of the beneficiaries in the statistical sample. The ALJ concluded that the appellant is liable and responsible for overpayment of noncovered services.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

*Id.* at 4.  Upon on the Medicare Appeals Council's denial of review, the ALJ's decision became the final decision of the Secretary.  *Id.* at 5.  On May 8, 2009 Dr. Bend filed her Complaint in this Court.

II.     Legal Standard

The Medicare Act provides for judicial review of a final decision made by the Secretary of Health and Human Services regarding amounts paid under Medicare.  *See* 42 U.S.C. § 1395ff(b).  The reviewing court may affirm, modify or reverse the final decision of the Secretary.  *See* 42 U.S.C. § 405(g) (incorporated by reference in 42 U.S.C. § 1395ff(b)).  However, the Secretary's decision will be disturbed only if it is not supported by substantial evidence on the record as a whole or if it is based on legal error.  *See Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "If the evidence is susceptible to more than one rational interpretation," a reviewing court is not entitled to substitute its judgment for that of the agency. *See Bear Lake Watch, Inc. v. FERC*, 324 F.3d 1071, 1086 (9th Cir. 2003).  Substantial evidence is "more than a mere scintilla but less than a preponderance," *Tackett*, 180 F.3d at 1098, and it is "evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  In making its determination on review, a court "must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Tackett*, 180 F.3d at 1098.  An agency's action is presumed valid and the burden is on the party challenging the action to show that it is arbitrary and capricious.  *Short Haul Survival Comm. v. United States*, 572 F.2d 240, 244 (9th Cir. 1978).

III.    Discussion

Dr. Bend challenges the decision of the ALJ on three grounds:  (1) the use of statistical sampling deprived Dr. Bend of due process and is invalid, (2) the evaluation of the medical records by Dr. Becker was "unsupported and based on speculation," and (3) the ALJ did not allow Dr. Bend a full and complete opportunity to be heard.  The Court addresses each in turn.

      A.     The Use of Statistical Sampling to Review Medicare Payments

Dr. Bend's main contention at trial is that the use of statistical sampling and extrapolation in the Medicare context is deeply flawed and has resulted in the deprivation of Dr. Bend's due process rights.  *See Pl's Opening Brief* 13:19-14:23.  While Dr. Bend is correct in saying that "statistics are not irrefutable," *id.* at 14:9, statistical sampling has been used by Medicare since

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

February 1986 and has withstood numerous due process challenges, *see Chaves County Home Health Serv.*, 931 F.3d 914, 916-18 (D.C. Cir. 1991); *see also Ratanasen v. State of Cal. Dep't of Health Servs.*, 11 F.3d 1467, 1471 (9th Cir. 1993) (upholding the use of statistical sampling "in connection with Medicare and other similar programs, provided the aggrieved party has an opportunity to rebut such evidence").

Dr. Bend argues that "while it is true that a technical 'majority' of courts have upheld statistical sampling and extrapolation in the Medicare/Medicaid context," chiropractic care is somehow unique and more subjective in nature than traditional "allopathic" care. *See Pl's Opening Brief* 14:15-24. However, the fundamental due process considerations are the same and the Court finds no reason to treat statistical sampling for chiropractic services any different than statistical sampling for other Medicare services.

The Fifth and Fourteenth Amendments to the United States Constitution provide that no person shall be "deprived of life, liberty or property, without due process of law. U.S. Const. amends. V, XIV § 1. Procedural due process is meant to "protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978). To determine whether a person's procedural due process rights have been violated, a court is to consider and balance three, often conflicting, factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). Here, the private interest is Dr. Bend's Medicare payments. The question is whether the Government's interest in administering the Medicare program or the risk of error outweighs Dr. Bend's private interest. The Court answers that question affirmatively.

In *Chaves*, the United States Court of Appeals for the District of Columbia Circuit held that there was no violation of the plaintiffs' procedural due process rights when it was determined, by statistical-sample review, that they were overpaid under the Medicare program. *See Chaves*, 931 F.3d at 915-16; 922-23. The D.C. Circuit found that the plaintiffs' "private interest at stake is easily outweighed by the government interest in minimizing administrative burdens." *Id.* at 922. In fact, "in light of the fairly low risk of error so long as the extrapolation is made from a representative sample and is statistically significant, the government interest predominates." *Id.*; *see also Illinois Physicians Union v. Miller*, 675 F.2d 151, 157 (7th Cir.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

1982) (holding, in the Medicaid context, that "in view of the enormous logistical problems of Medicaid enforcement, statistical sampling is the only feasible method available" to ensure proper reimbursement). Similarly, the Ninth Circuit noted the overwhelming government interest in Medicare's use of statistical sampling when it stated both that "[t]o deny public agencies the use of statistical and mathematical audit methods would be to deny them an effective means of detecting abuses in the use of public funds," and that "[p]ublic officials are responsible for overseeing the expenditure of our increasingly scarce public resources and we must give them appropriate tools to carry out that charge." *Ratanasen*, 11 F.3d at 1471.

Dr. Bend's argument that this Court should treat statistical sampling differently from other statistical sampling in the Medicare/Medicaid context because chiropractic care is inherently more subjective is unavailing. The overriding governmental interest in administering the Medicare or Medicaid program, as recognized by the Ninth, Seventh and D.C. Circuit Courts of Appeals, is the largely the same whether payment is provided for chiropractic or other health care services. Moreover, the risk of error, described as "fairly low" by the D.C. Circuit, is, in part, subject to Dr. Bend's own methods of transferring the subjective complaints of her patients into the objective billing codes and treatments according to her discretion as the treating professional. As noted by the ALJ, Dr. Bend is in no position to "object to the statistical analysis of criteria that she herself created." *AR* at 10. The use of statistical sampling in the Medicare and Medicaid contexts has been upheld by a number of different courts and Dr. Bend presents no viable argument as to why it should not apply to chiropractors receiving Medicare reimbursements.

The Court also notes that the Medicare Program Integrity Manual and HCFA ruling 86-1-1 allows Medicare to use statistical sampling to project overpayments if certain requirements are adhered to. The Medicare Carriers Manual, Publication 14, Part 3, Section 7156, sets forth those requirements and states that any statistical sample used to audit Medicare reimbursements must include the following: (i) identification of the physician whose services are at issue; (ii) a narrative description of the overpayment situation; (iii) a report of contact with the overpaid person or entity; (iv) the definition and nature of the sample design; (v) the sample results; and (vi) a discussion of any non-sampling error factors. *Id.* at 31. The ALJ explicitly found that "[t]he record contains a narrative description of the situation, including repeated contacts with [Dr. Bend]. The record also contains a detailed description of the methodology used to determine the overpayment amount." *Id.* Based on the administrative record, the ALJ's determination that the requirements of the Medicare Manual had been complied with was based on substantial evidence and the Court will not overturn it. *See AR* 6767-6974.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

Finally, Dr. Bend points out that the ALJ commented that "[t]he files were . . . so unorganized that serious doubts could be raised regarding the Carrier's ability to review the correct information in making its determinations." *Pl's Opening Brief* 15:14-16 (quoting *AR* at 66). According to Dr. Bend, the Carrier's comment shows that the statistical sampling used in this case is flawed. *Id.* 16:9-12. Importantly, the ALJ reviewed the evidence *de novo*, *see* 42 C.F.R. § 405.1004; 70 Fed. Reg. 36386 (June 23, 2005), and came to his own conclusion after, presumably, organizing the files. The fact that the Carrier may have had unorganized files before it when coming to its initial determination is completely unrelated to the ALJ's independent conclusions about overpayment, which are the only conclusions that this Court is reviewing.

The sample taken by the Carrier met the requirements of the Medicare program and when combined with the inherently low risk of error and the substantial government interest in statistical sampling, Dr. Bend has not suffered a procedural due process violation in this case.

  B. <u>Dr. Becker's Review and Analysis of the Medical Records</u>

Dr. Bend also argues that the Medicare Record Evaluation conducted by Dr. Becker was purely speculative and unsupported by the medical evidence. *See Pl's Opening Brief* 10:3-25. While Dr. Becker's analysis was used by the Carrier in reaching its determination, *see AR* at 6465, 7095, there is nothing that suggests the ALJ, in his *de novo* review of Dr. Bend's case, relied on Dr. Becker at all. In fact, Dr. Becker's name is not mentioned even once in ALJ Pease's decision. *See AR* at 14-61. Even if Dr. Becker somehow managed to get the case completely wrong, there is nothing to suggest that his error was not cured by ALJ Pease's *de novo* review of the evidence.

Dr. Bend's citation to Fourth and Ninth Circuit cases do not help her position. For example, she cites to *Millner v. Schweiker*, 725 F.3d 243, 245 (4th Cir. 1984) for the proposition that the "report of a non-examining, non-treating physician should be discounted and is not substantial evidence when contradicted by all other evidence on the record." *Pl's Reply* 4:5-10. In addition, she cites to *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) and argues that an ALJ cannot simply rely on a report of a non-examining physician where it contradicts all the other evidence on the record. *See id.* 4:11-18. Of critical importance here, however, is that unlike the cases cited to by Dr. Bend, nothing in ALJ Pease's decision suggests that he relied on Dr. Becker's conclusions, let alone that he did so despite other contradictory evidence.

  C. <u>Whether Dr. Bend Had a Full and Fair Opportunity to be Heard</u>

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

Dr. Bend's final argument before this Court is that she was "deprived of her[] opportunity to be heard at a meaningful time and in a meaningful manner due to the insistence of ALJ Pease to discontinue oral argument and testimony." *Pl's Opening Brief* 16:15-18. The Court disagrees.

Section 405(b) of Title 42 of the United States Code provides litigants before an ALJ a right to "notice and opportunity for a hearing." 42 U.S.C. § 405(b). If the parties agree, however, they can "waive their right to appear at the hearing in person or by telephone or video-teleconference," and "the ALJ may make a decision based on the evidence that is in the file and any new evidence that is submitted for consideration." 42 C.F.R. § 405.1000(e).

According to Dr. Bend, ALJ Pease "presented Dr. Bend and her counsel with a choice between arguing the [statistical] sampling issue or discussing the beneficiary cases." The transcript of the proceedings do reveal that ALJ Pease thought that going over each and every beneficiary's file would be an inefficient use of everyone's time. *See AR* at 7362-7363. The transcript also reveals, however, that Dr. Bend agreed and opted to submit the remaining evidence and arguments in writing, rather than at a hearing. *See id.* at 7401-02. Dr. Bend's decision to submit evidence in writing rather than at a hearing was her own decision and she cannot now complain that she was not afforded the opportunity for a hearing. Excerpts from the transcript of March 8, 2007 hearing illustrate the Court's decision. Mr. Negrete is Dr. Bend's attorney.

> ALJ Pease: . . . you don't have to do it this way, unless, I mean, you have a right to [a hearing] and we can spend days doing this if you want to, but we've been here on the air, on the record for over an hour and we're on [beneficiary] number 4 out of 47. So, you're welcome to keep doing it this way. I don't know if it's the most cost effective way to do this and the most, the best way for everybody. Would you like to just talk to your client and see what you want to do? . . . You can continue the way we're going now if you want and we'll come back on the 19th or even maybe on the 28th, okay, until we get it done because I want to get it done this month.
>
> Mr. Negrete: Well, I want to do it in the manner most efficient for the Court and so the Court could follow it. And I'll talk to my client, but I wanted her to be here to lay . . . the foundation for each patient.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

ALJ Pease: Well, she can do it as a declaration and sign the bottom of it. I have no problem doing everything as a declaration, you know, under, even under penalty of perjury . . . Just go through all of them [the beneficiaries] and do a long declaration for every one of them . . . And you can be more, you can be general or you can be as detailed as you want that way. But this, the way we're going through now is going to be very, very long.

Mr. Negrete: Right . . . she can do it by declaration, also.

ALJ Pease: . . . if you want to do a declaration and you feel you need another hearing to go over your declaration, we can, if you feel you need one, you tell me.

Mr. Negrete: I conferred with Dr. Bend over the matter that we discussed . . . and Dr. Bend would like to proceed by providing a declaration as to each of the patients in each of the claims, write a grid . . . My thought is that if the Court has any questions arising from that declaration or from the documents or evidence that we present by way of declaration, then we'd set a hearing date.

ALJ Pease: Written is fine with me. But if you prefer [a hearing], I don't want you to think you're not getting a hearing. So it's really for you two to decide how you want to do it. I'll set up another hearing date today . . . if you want.

Mr. Negrete: We'd like to submit it by declaration . . . and if there are any questions [we would address those] in a backup hearing if necessary.

ALJ Pease: Okay. So, we're setting no other dates. It's my understanding now that unless I ask for another date, you have no – you're not asking for another date yourself.

Mr. Negrete: "We'll submit, and I'll put it out there that unless there's other questions we [will] submit [everything] [in] writing . . . Great.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-3250 PSG (JCx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Amie Bend, D.C. v. Kathleen Sebelius | | |

*AR* at 7394-7412. The Secretary correctly argues that "[i]t is clear from the administrative record that Plaintiff was allowed to testify during the hearings," and that she was given ample opportunity to submit any additional evidence or arguments in writing to the ALJ. *See Def's Reply* 6:1-13. Moreover, ALJ Pease's decision makes it clear that the submitted evidence was considered when determining that the Carrier's Hearing Officer was partially correct and partially incorrect in the initial overpayment determination. *See, e.g., AR* at 43-44 ("The Appellant submitted additional, post hearing, documentation for this claim . . . [and] [u]pon review of the treating notes, there is now documentation . . . [but] [e]ven with the additional medical records, there is still insufficient medical evidence to support [the charges] as billed."). Dr. Bend had three days of hearings and, after speaking with her attorney, decided to submit the rest of the evidence to the ALJ without testimony. Dr. Bend provides no evidence for her contention that "ALJ Pease pressured Dr. Bend to discontinue oral argument and testimony." *See Pl's Reply* 8:20-25. Moreover, the fact that ALJ Pease put a time limit on Dr. Bend's arguments, *see id.* at 7326, does not establish that Dr. Bend was denied a proper hearing, especially considering that Dr. Bend was not limited in what, or how much, she could submit in writing. Dr. Bend has thus failed to establish that she was denied her right to a hearing.

IV. <u>Conclusion</u>

Plaintiff Aime Bend has failed to establish that the Secretary's challenged determinations were not supported by substantial evidence or were wrong as a matter of law. As a result, the Secretary's decision in the appeal of Aime A. Bend, D.C. is AFFIRMED.